People v Waymer (2025 NY Slip Op 52109(U))

[*1]

People v Waymer

2025 NY Slip Op 52109(U)

Decided on June 23, 2025

Criminal Court Of The City Of New York, Bronx County

Lewis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 23, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

againstBernard Waymer, Defendant.

Docket No. CR-030834-24BX

Defendant: Mink Aggarwal of The Legal Aid SocietyPeople: Bronx County District Attorney's Office by ADA Eric Benoit.

Daniel M. Lewis, J.

Defendant is charged by information with one count of petit larceny pursuant to PL § 155.25, a class A misdemeanor punishable by 364 days jail, and other related charges, alleging that on October 28, 2024, Defendant unlawfully entered a vehicle and stole property.
On April 28, 2025, Defendant moved to dismiss the case pursuant to CPL §§ 170.30 (1) (e) and 30.30, arguing that the People's certificate of compliance ("COC") was invalid; that the statement of readiness ("SOR") was illusory; and therefore the People have exceeded the statutorily prescribed speedy trial time of ninety days.
For the reasons explained below, Defendant's motion to find the People's COC invalid is DENIED, and Defendant's motion to dismiss the accusatory instrument pursuant to CPL §§ 170.30 (1) (e) and 30.30 is DENIED.
 PROCEDURAL HISTORYOn December 6, 2024, Defendant was arraigned on two counts of PL § 155.25, petit larceny, based on allegations that on October 28, 2024, and November 9, 2024, he unlawfully entered vehicles and took property that did not belong to him. On February 13, 2025, the People filed a superseding information, which removed the count from the November 9, 2024, incident.
On February 19, 2025, the People filed their COC and SOR. On February 27, 2025, the People filed their first supplemental COC (SCOC), and on March 9, 2025, the People filed their second and third SCOC. On March 10, 2025, the case was heard in Part AP2 during which Defendant was not present, and a bench warrant was stayed. Defense counsel indicated she needed time to review the discovery, and the matter was adjourned to March 14, 2025, for Defendant to appear. On March 14, 2025, the case was heard in Part AP2. Defense counsel indicated she needed more time to review the discovery, and the matter was adjourned to April 4, 2025, for a COC conference. On March 21, 2025, the People filed their fourth SCOC, and on [*2]April 4, 2025, the People filed their fifth and final SCOC.
At the court appearance on April 4, 2025, Defendant requested the instant motion schedule, and the case was adjourned to June 11, 2025, for a decision.

DISCUSSION
I. Motion to Dismiss the Accusatory InstrumentA motion to dismiss must be granted where the People are not ready for trial within "ninety days of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a misdemeanor punishable by a sentence of imprisonment of more than three months, and none of which is a felony" (CPL §§ 30.30 [1] [b], 170.30 [e]).
This case commenced on December 6, 2024, with the filing of a misdemeanor complaint in which the highest charged offense was an A misdemeanor, punishable by 364 days jail (PL § 70.15 [1]). On February 13, 2025, the People replaced the complaint with a superseding information. The parties agree that the People had ninety days from December 6, 2024, to be ready for trial.
At issue is the validity of the February 19, 2025, COC. Without a valid COC, the SOR filed that day would be a nullity and ineffective to stop the "speedy trial" clock (CPL §§ 30.30 [5], 245.50 [3]; People v Bay, 41 NY3d 200, 206 [2023]). Defendant contends that the February 19, 2025, SOR was illusory because it was not preceded or accompanied by a valid COC, and thus 119 days are chargeable to the People. The People argue that the COC was valid, thus the SOR was not illusory, and only seventy-seven chargeable days have elapsed.
"[T]he key question in determining if a proper COC has been filed is whether the prosecution has 'exercise[d] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery.'" (Bay, 41 NY3d at 212, quoting CPL § 245.20 [2]). Although "[t]here is no rule of 'strict liability' the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of due diligence" (id. at 212). On a motion challenging the validity of a COC, "the People bear the burden of establishing that they did, in fact, exercise due diligence and make reasonable inquiries prior to filing the initial COC" (id. at 213). "[P]ost-filing disclosure and a supplemental COC cannot compensate for a failure to exercise due diligence before the initial COC is filed" (id. at 212). Thus, the People must demonstrate their efforts to determine the existence of the belatedly disclosed materials before filing the initial COC (id.; People v Baker, 229 AD3d 1324, 1326 [4th Dept 2024]).
Factors identified by the Court of Appeals as relevant to this analysis include, but are not limited to, "the efforts made by the prosecution and the prosecutor's office to comply with the statutory requirements, the volume of discovery provided and outstanding, the complexity of the case, how obvious any missing material would likely have been to a prosecutor exercising due diligence, the explanation for any discovery lapse, and the People's response when apprised of any missing discovery" (Bay, 41 NY3d at 212). Moreover, this court agrees that the question of COC validity "calls for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (People v Cooperman, 225 AD3d 1216, 1220 [4th Dept 2024]).
Here, Defendant asserts that the missing or belated disclosure of 1) the body-worn [*3]camera ("BWC") footage for PO Mejia; 2) BWC for PO Santana; 3) activity log for PO Mejia; 4) activity log for PO Santana; 5) 911 recording; 6) SPRINT report; 7) adequate witness contact information; 8) substantiated Internal Affairs Bureau ("IAB") Log 19-11172; 9) prisoner holding pen roster; and 10) command log demonstrates that the People's COC was invalid and the SOR thus illusory. The People counter that they evinced the good faith, due diligence, and reasonable inquiry required for COC validity. In short, the People are correct. As further explained below, the People's efforts reflect those of a reasonably prudent prosecutor in that discovery was initially requested with sufficient time for follow up; the People did follow up with law enforcement several times prior to filing their COC and SOR; when law enforcement finally provided discovery, the People promptly remitted it to defense while continuing to follow up regarding missing items; and they immediately took steps to correct errors and oversights upon learning of them.
II. Motion to Invalidate the People's COC
BWC Footage and Activity Logs for PO Mejia and PO SantanaThe People belatedly disclosed BWC footage and activity log entries for PO Mejia and PO Santana on March 7 and March 9 of 2025, respectively, well after filing their COC. These items are discoverable under CPL § 245.20 [1].
Nonetheless, the People aver that the delay was reasonable because they only learned of PO Mejia's and PO Santana's involvement after reviewing the DD5's submitted by NYPD on February 19, 2025. The People further argue that their COC should not be invalidated because once they became aware of these officers, they immediately requested these materials; repeatedly followed up until both items were received; and promptly remitted them to defense counsel upon receipt.
In support, the People's moving papers contained a robust correspondence record showing the People's efforts to get BWC and the activity logs from PO Mejia and PO Santana. This included several phone calls, emails, and even requests for the officers' personal appearances. This belies Defendant's assertion that the People's explanation was disingenuous, and instead clearly shows that the People evinced the good faith, due diligence, and reasonable inquiry required under the law.
911 Call and SPRINT ReportThe People belatedly disclosed the 911 call and SPRINT report on March 21, 2025, well after filing their COC. These items are discoverable under CPL §§ 245.20 (1) (g) and (e).
The People assert that they exercised due diligence regarding these items and filed the COC in good faith because they twice requested these items early in the proceedings and those results were returned as negative. In support of this, the People provided the requests they made to the NYPD on December 16, 2024, and February 14, 2025. The People also provided correspondence showing that when Defendant emailed their objections on March 20, 2025, noting that the 911 call was mentioned in documents already disclosed, they addressed the issue the next day. On March 21, 2025, the People called the NYPD to follow up on these materials and, upon receiving them, immediately sent them to defense.
Defendant is correct that the People should have known about these materials as they [*4]were referenced in previous paperwork. However, it appears the error was likely due to the People using an arrest number previously associated with Defendant to request the current records. "[T]he statute does not require or anticipate a 'perfect prosecutor,'" and the inadvertent transposition of arrest numbers to request 911 calls is a good example of that principle (see People v Erby, 68 Misc 3d 625, 633 [Sup Ct Bronx County 2020]; People v Gonzalez, 68 Misc 3d 1213(A), *1,3 [Sup Ct Kings County 2020]; People v Georgiopoulos, 71 Misc 3d 1215(A), *2 [Sup Ct Queens County 2021]).
Notably, the People requested 911 calls twice without being prompted despite receiving an affirmative negative response the first time, and when defense counsel pointed out the likely error, the People promptly remedied it. As such, the Court finds that the People demonstrated the good faith, due diligence, and reasonable inquiry required under the law.
Adequate Contact Information for a WitnessThe People belatedly disclosed contact information for a named witness to the incident on February 27, 2205, shortly after the filing of their COC. This material is discoverable under CPL § 245.20 (1) (c).
The People explained that with their original COC, they disclosed the names and contact information for three witnesses and overlooked the fourth. On February 27, 2025, the People noticed the error, updated the witness list, and filed an SCOC.
This Court finds the reasons for the delay of these materials to be reasonable, given that this was an oversight. Additionally, the People had turned over witness information for three individuals and the prosecution immediately addressed the error of omitting the fourth individual upon discovering it. Thus, the Court finds that the People demonstrated the required good faith and due diligence under the law.
Substantiated IAB Log 19-11172The People belatedly disclosed IAB Log 19-11172, which informed on substantiated claims of misconduct against a testifying officer, on March 21, 2025, well after the filing of their COC. This document is discoverable under CPL § 245.20 (1) (k) (iv) (see also People v Rodriguez, 77 Misc 3d 23 [1st Dept. 2022]; Matter of Jayson C., 200 AD3d 447 [1st Dept. 2021)]; People v Coley, 232 N.Y.S.3d 173 [2d Dept 2025]).
The People explained in their papers that they uploaded a file that was similarly named, albeit the incorrect file. On March 20, 2025, Defendant notified the prosecution of this error. The prosecution immediately rectified the issue the next day, March 21, 2025, by sending the correct IAB Log.
This Court does not find this error to be fatal to the People's COC. As the People turned over other Giglio material and quickly amended the error upon realizing it, the Court finds that the required due diligence and good faith under the law was exercised.
Prisoner Holding Pen Roster and Command LogDefendant argues that the prisoner holding pen roster and command log are subject to automatic discovery under CPL § 245.20 (1) (e) but offers no explanation for how these [*5]materials relate to the subject matter of the case. At any rate, on March 31, 2025, the People provided these materials and on April 4, 2025, filed an SCOC for them.
Similar to roll call logs, "the information contained [in the prisoner holding pen roster and the command log] is not case specific" and therefore "not subject to automatic discovery" (People v. J.M.W., 83 Misc 3d 1289 [A], *6 [Sup Ct, Kings County 2024]). Absent some connection to "the prosecution of the charge," these items are not subject to automatic discovery, and no such connection is set forth here (CPL § 245.20 [2]). For these reasons, the Court declines to invalidate the COC based on their late disclosure.

 CONCLUSION
For the reasons above, the Court finds that the People's February 19, 2025, COC was valid, and the SOR filed on the same date was not illusory. Thus, the total chargeable time here equals seventy-seven days, within the time permitted by statute. As such, Defendant's motion to dismiss the accusatory instrument pursuant to CPL §§ 30.30 and 173.30 (1) (e) is DENIED.
The foregoing constitutes the decision and order of the Court.
Dated: 23 June 2025Bronx, New YorkDANIEL M. LEWIS, J.C.C.